IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHUAN PHILLIPS, § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | Civil Action No. 3:09-CV-2438-L-BK |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Court's order of reference dated June 28, 2010, this case has been referred to the undersigned for Findings, Conclusions, and Recommendation. For the reasons set forth herein, it is recommended that the case be reversed and remanded for further proceedings.

### I. BACKGROUND[1]

**A.  Procedural History**

Michuan Phillips (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act ("Act"). On May 23, 2007, Plaintiff filed for SSI, claiming that she was disabled since April 9, 2007, due to diabetes and high blood pressure. (Tr. at 142-48, 176-77). Her application was denied initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. 80-85, 88-91, 94). Plaintiff personally appeared and testified at a hearing

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

held in September 2008. (Tr. at 57-75). On November 6, 2008, the ALJ issued his decision finding Plaintiff not disabled, which Plaintiff timely appealed to the Appeals Council. (Tr. at 15-21,42-44). In February 2009, the Appeals Council denied Plaintiff's request for review, and again denied her request for review in September 2009 after considering new evidence. (Tr. at 1-10). Therefore, the ALJ's decision became the final decision of the Commissioner. (Tr. at 3). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.** **Factual History**

    **1.** **Age, Education, and Work Experience**

Plaintiff was born on January 28, 1962, and was 46 years old at the time of the hearing before the ALJ. (Tr. at 64). She has not received a high school diploma or a GED, and only competed the tenth grade. *Id.* Plaintiff has prior work experience as a housekeeper, hospital janitor, a temporary employee, and a fast food worker. (Tr. at 64-65, 178, 184).

    **2.** **Medical Evidence**

On June 6, 2006, Plaintiff was seen at the Ambulatory Care Clinic ("the Clinic"), a part of the Parkland Health & Hospital System, complaining of body aches, bone pain, neck pain, and fatigue. (Tr. at 234-35). Plaintiff returned on October 2, 2006, for a refill of her bipolar medication and doctors also added cellulitis as a diagnosis. (Tr. at 236-37). Plaintiff again returned on January 20, 2007, and a physical examination revealed abscesses on her chest and lower right extremity. (Tr. at 232-245). The examination records also indicated Plaintiff's medical history of diabetes and hypertension (high blood pressure).

On April 11, 2007, Plaintiff returned to the Clinic for a refill of her medications. (Tr. at

244). Medical records from this visit note Plaintiff was not properly taking her medication, but that all her lab work was normal. (Tr. at 245). Plaintiff presented to the Clinic on April 26, 2007, for examination, at which time Plaintiff stood five feet tall, weighed 199 pounds, and had a Body Mass Index ("BMI") of 37-38. (Tr. at 259). Plaintiff was diagnosed with diabetes, obesity, and tobacco dependence. (Tr. at 260). Plaintiff returned to the Clinic on April 29, 2007, complaining of vomiting and diarrhea, which the medical staff attributed to her medication and it was adjusted. (Tr. 246-47). The Clinic attended to various complaints from Plaintiff and further treated Plaintiff for her diabetes and hypertension on May 9, May 18, July 18, and August 28, 2007, and again on January 14 and March 27, 2008. (Tr. at 251-56, 291-92, 300-304). On the last three occasions, Plaintiff's BMI was noted at 38.5 (Tr. at 291-92, 300-304).

On July 2, 2007, Plaintiff underwent a disability examination. (Tr. at 266). Dr. Robert Harris noted Plaintiff was well developed/nourished, cooperative, and well groomed, but described her as having a "flat effect, on the verge of tears. . ." (Tr. at 267). Dr. Harris also noted Plaintiff's height was five feet one inch, weight was 202, and BMI was 38. (Tr. at 267). Dr. Harris diagnosed Plaintiff with diabetes, hypertension, and malaise. (Tr. at 268). On July 3, 2008, Dr. Aamir Mithani examined Plaintiff at the East Dallas Health Center, also part of the Parkland Health and Hospital System. (Tr. at 289). Dr. Mithani remarked Plaintiff suffered from uncontrolled diabetes and major depression, for which he prescribed Celexa and instructed Plaintiff to follow up with her primary care physician. (Tr. at 289). Plaintiff additionally was seen by Dr. Gordon on May 5, 2008, at which time Dr. Gordon diagnosed Plaintiff with diabetes, hypertension, and depression. (Tr. at 23-25).

### 3. Hearing Testimony

The ALJ held a hearing in September 2008. (Tr. at 58). At the hearing, a medical expert, Dr. Sterling Moore, Plaintiff, and vocational expert ("VE"), Tammy Donaldson, testified. (Tr. at 58-75). Dr. Moore testified that Plaintiff suffers from diabetes and hypertension, neither of which are well controlled or severe. (Tr. at 60-62). He also testified that Plaintiff has a history of skin problems and generalized pain. (Tr. at 60-61).

Plaintiff was represented by counsel and testified that she was forty-six years old, married and lived at her grandfather's house. (Tr. at 64). She made it through the tenth grade in school and, even though she tried, she never obtained her GED. (Tr. at 64). In the past, she has done housekeeping work, taken care of the sick at a nursing home, cooked, and cashiered. (Tr. at 64-65). During a typical day, she gets up, eats something, takes her medication, then goes back to bed. (Tr. at 65). She is tired all the time and sleeps the majority of the day because she only feels better when she is asleep. (Tr. at 65). She tries to do work around the house but never finishes and her husband has to do most of the house work. (Tr. at 65-66, 69-70). She also testified she often gets sick as a side-effect from her medication and had to leave work three to four times a week due to being sick when she had a job. (Tr. at 66-67). When asked about her depression, she testified she cries a lot and "can't stand a whole lot of nothing." (Tr. at 67). She further explained that if she had a job she would probably not be able to take it and would run out. (Tr. at 68). She does not own a car but uses her daughter's car. (Tr. at 70).

The VE testified that Plaintiff's past relevant work consisted of a fast food worker, a hospital cleaner, a housekeeper, and a nurse's assistant. (Tr. at 71-72). All of these were considered light with a specific vocational preparation ("SVP") of 2, except being a nurse's

4

assistant which is classified as medium with a SVP of 4. (Tr. at 71-72). The ALJ submitted a hypothetical situation to the VE that if he found Plaintiff was limited to light work, could not climb ropes, ladders, or scaffolds, could occasionally climb ramps and stairs, occasionally balance, stoop, kneel, and crawl, and that because of her depressive situation she could only perform simple tasks, only understand, remember, and carry out simple instructions, relate adequately with co-workers and supervisors, and only work in a routine environment, on a one or two step task on a repetitive basis, could she still perform the light jobs described as her past work. (Tr. at 72). The VE testified Plaintiff's would be able to perform her past work as a fast food worker, cleaner, and housekeeper. (Tr. at 72). On examination by Plaintiff's counsel, the VE testified that if a hypothetical person were unable to pay attention for a full two-hour period and would miss four or more days of work a month due to stress, that person would likely not be able to keep a job. (Tr. at 73-74).

## C. ALJ's Findings

The ALJ found Plaintiff met the insured status requirements of the Act. (Tr. at 47). Plaintiff had not engaged in any substantial gainful activity since April 9, 2007, the alleged onset date. (Tr. at 48). Plaintiff had the severe impairments of diabetes mellitus and hypertension. (Tr. at 48). Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. §§ 404.1525, 416.925, 416.926. Plaintiff had a residual functional capacity ("RFC") to occasionally lift and/or carry 20 pounds; frequently lift or carry 10 pounds; stand and/or walk for a total of six hours in an eight hour workday; sit for a total of six hours in an eight hour workday and push and/or pull consistent with her strength limitations. (Tr. at 50). Plaintiff had the ability to perform the full range of

5

light work activity, as defined by 20 C.F.R. §§ 404.1567(b), 416.967(b), reduced by her inability to climb ramps/stairs, balance, stoop, kneel, crouch or crawl on more than an occasional basis and inability to ever climb ladders, ropes, or scaffolds. (Tr. at 50). Plaintiff's RFC was further restricted to simple tasks and she could only understand, remember, and carry out simple instructions. (Tr. at 50). Plaintiff could only adapt to a routine work environment with repetitive task and was able to interact appropriately with coworkers and supervisors. (Tr. at 50). The ALJ concluded that Plaintiff was capable of performing her past relevant work as a fast food worker and housekeeper/cleaner and therefore Plaintiff was not disabled. (Tr. at 52-53).

## II. ANALYSIS

A.  **Legal Standards**

1.  **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340,

343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the SSI program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for DIB are identical to those governing the determination under a claim for SSI. *See id.* Thus, the Court may rely on decisions in both areas, without distinction, in reviewing an ALJ's decision. *See id.*

### 2. Disability Determination

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and

> residual functional capacity must be considered to determine if work can
> be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### 3. Standard for Finding of Entitlement to Benefits

Plaintiff asks the Court to reverse the Commissioner's decision and, in the alternative, to remand for further proceedings. (Pl. Brief at 15).

When an ALJ's decision is not supported by substantial evidence, the case may be remanded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 1:08-CV-045-C, 2009 WL 3029772, *10 (N.D. Tex. Sept. 22, 2009) (adopting recommendation of Mag. J.). The claimant must carry "the very high burden of establishing 'disability without any doubt.'" *Id.* at *11 (citation omitted). Inconsistencies and unresolved issues in the record preclude an immediate award of benefits. *Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005). The

Commissioner, not the court, resolves evidentiary conflicts. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

B.     **Issues for Review**

Plaintiff presents the following issues for review:

(1) The ALJ failed to abide by *Stone v. Heckler* by failing to include Plaintiff's depression among her severe impairments and failing to state the proper standard for severity;

(2) The ALJ did not give consideration to Plaintiff's obesity, as required by SSR 02-1p; and

(3) The Appeals Counsel failed to properly consider new evidence from Plaintiff's treating physician, Dr. Dempsey Gordon.

(Pl. Brief at 2).

C.     **Issue one: Failing to state the proper legal standard for severity.**

Plaintiff contends that the ALJ erred in not applying the proper legal standard for determining whether Plaintiff's impairments were severe at Step 2 of the evaluation process, and in failing to include depression as a severe impairment. (Pl. Brief at 2, 9-11).

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *Charlton v. Astrue*, No. 10-cv-0056, 2010 WL 3385002 at *6 (N.D. Tex. July 14, 2010). A literal application of these regulations is inconsistent with the Act because the definition includes fewer conditions than indicated by statute. *See Stone v. Heckler*, 752 F2d 1099, 1104-05 (5th Cir. 1985); *Charlton*, 2010 WL 3385002 at *6-7. Therefore, the Fifth Circuit holds that an impairment is not severe

9

"only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone*, 752 F.2d at 1101; *Charlton*, 2010 WL 3385002 at *6-7. Further, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Stone*, 752 F.2d at 1104; *Charlton*, 2010 WL 3385002 at *6-7.

In *Stone*, the Fifth Circuit held that it would assume that the "ALJ and Appeals Counsel have applied an incorrect legal standard to the severity requirement unless the correct standard is set forth by reference to [the *Stone* opinion] or another of the same effect, or by an express statement that the construction we give to 20 C.F.R § 404.1520(c) is used." *Stone*, 752 F.2d at 1106; *Charlton*, 2010 WL 3385002 at *6-7. Nevertheless, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Charlton*, 2010 WL 3385002 at *6-7 (citation omitted). Unless the correct standard of severity is used, the claim must be remanded to the Commissioner for reconsideration. *Stone*, 752 F.2d. at 1106; *Charlton*, 2010 WL 3385002 at *6-7.

Here, when setting out the law in his opinion, the ALJ stated that an "impairment or combination of impairments is 'severe' within the meaning of the regulations it if significantly limits an individual's ability to perform basic work activities." (Tr. at 46). This is the standard set forth in 20 C.F.R. §§ 404.1520(c), 416.920(c) that *Stone* found to be inconsistent with the Social Security Act. *Stone*, 752 F.2d at 1104-05; *Charlton*, 2010 WL 3385002 at *6. The ALJ also stated that "an impairment or combination of impairments is not 'severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work." (Tr. at 46 (citing

10

to 20 C.F.R. §§ 404.1521, 416.921; SSRs 85-28, 96-3p, 96-4p)). Unlike the standard set out by the ALJ, *Stone* does not allow for minimal interference with an individual's ability to work. *Charlton*, 2010 WL 3385002 at *6; *Ruby*, 2009 WL 4858060 at *8.

The United States District Court for the Northern District of Texas is consistent in its refusal to find the standard applied in this case is the standard set out in *Stone*. *See Ruby v. Astrue*, No. 3:08-cv-1012, 2009 WL 4858060 at *8 (N.D. Tex. Dec. 14, 2009); *Charlton*, 2010 WL 3385002 at *6-7; *Roberson v. Astrue*, No. 3:10-cv-0240, 2010 WL 3260177 at * 9-10 (N.D. Tex. Aug. 17, 2010); *Sanders v. Astrue*, No. 3:07-cv-1827, 2008 WL 4211146 at *7 (N.D. Tex Sept. 12, 2008). The ALJ's standard recognized that a non-severe impairment could have a minimal effect on Plaintiff's ability to work, while *Stone* holds that a non-severe impairment would not be expected to interfere with Plaintiff's ability to work. *Foster v. Astrue*, No. H-08-2843, 2010 WL 1340671 at *12-13 (S.D. Tex. March 30, 2010). Although the United States District Court for the Northern District of Texas has recognized that the difference between the two statements may appear to be slight, the ALJ's construction is not an express statement of the *Stone* standard. *Ruby*, 2009 WL 4858060 at * 8. The difference, coupled with the ALJ's failure to cite *Stone* or a similar opinion, or to expressly mention the Fifth Circuit's interpretation of the regulation, constitutes the ALJ's application of an incorrect legal standard. *Id*. (citations omitted).

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of the parties have been affected." *Roberson*, 2010 WL 3260177 at * 10 (citations omitted). Here, the Commissioner argues that a remand for a Step-2 error would be inappropriate because such error is harmless. (Def. Brief at 13-14).

11

However, the ALJ's failure to apply the *Stone* standard is a legal error, not a procedural error. *Roberson*, 2010 WL 3260177 at * 10. The Fifth Circuit has left the lower courts no discretion to determine whether such an error is harmless. *Id*. Rather, in *Stone*, the Fifth Circuit mandated that, "unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1006; *Roberson*, 2010 WL 3260177 at *10.

Thus, Fifth Circuit precedent requires that this case be remanded because the ALJ applied an incorrect legal standard of severity at Step 2. *Ruby*, 2009 WL 4858060 at * 8; *Charlton*, 2010 WL 3385002 at *6-7; *Roberson*, 2010 WL 3260177 at * 9-10; *Foster,* 2010 WL 1340671 at * 12-13 . Because remand is required for failure to apply the proper severity standard at Step 2, the Court need not consider Plaintiff's other issues for review.

### III. RECOMMENDATION

The Court recommends that the decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

**SO RECOMMENDED** on September 21, 2010.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE